# EXHIBIT LIST

A.   Mr. Ian R. Yourtz's Letter to the Trustee, dated August 13, 2009.          1 page.

B.   Pages of Debtor's deposition forwarded from Mr. Yourtz to the Trustee
     taken from Debtor's state court martial dissolution proceeding.          3 pages.

C.   The Trustee's Fourth Amended Objection to Confirmation.                   2 pages.

D.   Declaration of Eleanor Lindquist in Response to the Trustee's
     Fourth Amended Objection to Confirmation of Debtor's Plan.               4 pages.

E.   The Trustee's Fifth Amended Objection to Confirmation.                    2 pages.

F.   Pictures of the Armoire Provided by Debtor to the UST.                    2 pages.

G.   Debtor's letter to her daughter dated April 14, 1986.                     1 page.

Case: 08-31643    Doc# 25-1    Filed: 03/23/10    Entered: 03/23/10 12:20:45    Page 1 of 23

# EXHIBIT A

LAW OFFICES

IAN R. YOURTZ

ELEVEN HUNDRED ALMA
SUITE 209
MENLO PARK, CALIFORNIA 94025
(650) 326-0771

August 13, 2009

David Burchard
U.S. Bankruptcy Trustee
393 Vintage Park Drive, Suite 150
Foster City, CA 94404

In re Bankruptcy of Eleanor Lindquist
Case No. 08-31643

Dear Mr. Burchard:

As you may recall, I represent Mr. Jeffrey Lindquist in the marital dissolution proceeding pending in the San Mateo County Superior Court.

Incident to that litigation, I began taking the debtor's, Ms. Eleanor Lindquist's, deposition on July 10, 2009. During that deposition Ms. Lindquist testified under oath that she has in her possession an antique wardrobe that she paid $150,000 for and which may be worth more now than it was when acquired. You will find that she listed the value of her household furniture and furnishings as $3,000 in her original and amended Chapter 13 schedules.

In addition, Ms. Lindquist testified she retained her most recent counsel with the deposit of $65,000 and the assurance of $35,000 more in short order.

The pages from the deposition transcript are enclosed for your information. Should you desire the entire deposition transcript (it is only Volume I of what I expect will be a multi-day deposition but the next session is not yet certain), I will be happy to provide it upon your request.

Sincerely,

IAN R. YOURTZ

IRY
cc: Client

# EXHIBIT B

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

In re the Marriage of

Petitioner:  ELEANOR LINDQUIST

    **and**       CASE NO: F081525

Respondent:  JEFFREY LINDQUIST

_____/

DEPOSITION OF ELEANOR LINDQUIST

VOLUME I

| | |
|---|---|
| DATE: | Friday, July 10, 2009 |
| TIME: | 10:22 A.M. |
| LOCATION: | LAW OFFICES OF IAN R. YOURTZ<br>Attorneys at Law<br>Eleven Hundred Alma Street<br>Suite 209<br>Menlo Park, CA 94026 |
| REPORTER: | Patricia Hope Sales, CRR<br>CSR License Number C-4423 |

# CONDENSED TRANSCRIPT

**Page 58**

1   A. Yeah, I thought -- square.
2   Q. Do you know if it was made out of mahogany?
3   A. Hmm.
4   Q. "Yes"?
5   A. Yes. It was a tea box, which means it has a
6 crystal bowl in the middle and two compartments on
7 either side for various kinds of tea or condiments.
8   Q. And you got that one in France, did you?
9   A. I think I did.
10   The other smaller or narrower ones, although
11 they were longer, were English. And they were -- they
12 were like a -- more looking like a walnut, because they
13 were light and dark colors.
14   Q. And you got those in England --
15   A. England, yeah.
16   Q. Okay. And so the four boxes were one two to
17 one six million?
18   A. Close. Close. These are collectors' items.
19 Boxes, like art, are collectors' items, and increase in
20 value, probably double their value every year. You can
21 find that out at -- on any antique site, web site.
22   Q. And what did you pay for them, did you pay the
23 three hundred or four hundred thousand dollars?
24   A. I may or may not have. I don't recall. Some
25 of them I got for a little less. I don't recall. I

**Page 59**

1 don't recall.
2   Q. Okay. The ones that you got in England, did
3 you buy them all at the same place?
4   A. No.
5   Q. Do you remember where you bought them?
6   A. I got them in London. I'm trying to think of
7 where. It's been a while. I -- I don't remember
8 where.
9   There was a very famous box shop at the time
10 and I can't -- I can't remember where. It's labeled on
11 the bottom of the box.
12   Q. Okay.
13   A. There was one box from China also, a long dark
14 mahogany box, very long, about five inches tall,
15 mirrored in the back, compartmentalized for jewelry.
16   Q. And how much did you pay for that one?
17   A. That one I got for a lot less. That was
18 probably about eighty to ninety dollars.
19   Q. Eighty to ninety dollars?
20   A. Yes, eighty to ninety dollars. But it was --
21 it was in bad need of repair. I made the repair and
22 the repair brought it back up to about a hundred and
23 seventy-five, two hundred thousand.
24   Q. A hundred and eighty to two hundred?
25   A. Um-hmm. When you repair these boxes, when they

**Page 60**

1 are -- if they have got all their parts and they are
2 just shabby, you bring it back to its normal state and
3 it very worthwhile.
4   Q. Did you do that by yourself?
5   A. I did not. I sent it out to do.
6   Q. To who?
7   A. I sent it to -- the name of that large antique
8 dealer in New York City. I can't remember the name.
9   Q. Any other boxes?
10   A. I don't think so.
11   Q. So we have got four that you bought on the
12 continent and one you bought in China?
13   A. Yes.
14   Q. By the continent, I mean Europe, England and
15 France.
16   A. Yes.
17   Q. Okay. Good.
18   Any other wooden furniture?
19   A. God, there are so many pieces, Ian, I'm not
20 going to be able to bring this up. I can't remember.
21   Q. You can't remember any others?
22   A. I can't. I just --
23   I got one early American piece which is not
24 quite a hundred years old so it's not an antique yet,
25 but it will be soon another three years. That, I have.

**Page 61**

1 That's back with me. That came back in storage as
2 well.
3   Q. And what storage place did it come from?
4   A. The storage that Jac- -- Jacobowski told
5 Jeffrey to give back to me.
6   Q. And that's an American piece, did you say?
7   A. Yes.
8   Q. Pine?
9   A. No. No. It's walnut, dark walnut -- not
10 walnut -- cherry. Dark cherry.
11   Q. And what sort of a piece is it?
12   A. It's a wardrobe with drawers.
13   Q. Do you remember where you got it?
14   A. I think in England, believe it or not. Shipped
15 from America to England, and I shipped it back.
16 Somebody shipped it there.
17   Q. How much did you pay for it?
18   A. I probably paid a hundred and fifty thousand
19 for it.
20   Q. And you have this one now?
21   A. I do.
22   Q. Where is it located?
23   A. In my garage.
24   Q. Would you object to me sending an antiques
25 appraiser over to take a look at it?

16 (Pages 58 to 61)

Case: 08-31643   Doc# 25-1   Filed: 03/23/10   Entered: 03/23/10 12:20:45   Page 6 of 23

1     A. Please do.

2       MR. YOURTZ: Is that okay with you, Counsel?

3       MR. ROCKEY: That's fine.

4       (Request indexed.)

5   BY MR. YOURTZ:

6     Q. What I'll do is I'll contact forensic and then

7   be in contact with counsel and we'll make these

8   arrangements. I'm not going to come by obviously. But

9   we'll have someone there.

10     A. That's great. They may appraise it — they may

11   appraise it much higher than I gave you. It may be at

12   least a hundred thousand dollars more, but that's what

13   I appraised it for. It could even be appraised for two

14   hundred thousand dollars more.

15     Q. That's what you paid for it?

16     A. That I paid for it. But it could be appraised

17   for a lot higher, easily.

18     Q. Now, do you remember where you bought that

19   wardrobe?

20     A. No. As I said, in England somewhere.

21     Q. Right. But you don't remember where?

22     A. No. That was probably on some side street, I

23   saw it in a window and said, "That's American; I'm

24   bringing that back."

25     Q. London?

62

1     A. Probably.

2     Q. Was this London?

3     A. Yeah.

4     Q. Probably, or yes?

5     A. Yes.

6     Q. And any other wood pieces that you can

7   remember?

8     A. I can't remember any others, no.

9     Q. Okay. Now, when you said china, you meant

10   eating pieces, correct?

11     A. Yes.

12     Q. You had service for so many; is that correct?

13     A. No, no, I'm not talking about —

14     Q. Oh.

15     A. — my service. I'm talking about — my china

16   service is Wedgewood bought here in the United States,

17   and that's — they are not antiques.

18       But, yes, I do have my china and I still have

19   it.

20       The pieces that are missing that are at issue

21   here are the ancillary pieces that are the beautiful

22   chinas over a hundred, hundred fifty years old or more.

23   Some of them are from 1774. Some of them are Chinese

24   pieces that are very old as well. They are all

25   missing.

63

1     Q. Okay. As -- as you remember them, could you

2   describe the first one that you can remember?

3     A. Yes. The first one is a white dish about

4   fifteen inches in diameter with a scalloped gold —

5   beautiful scalloped gold edge with light blue flowers

6   embedded in it, very light blue small flowers.

7     Q. And where did you buy that?

8     A. That was in England.

9     Q. How much did you pay?

10     A. I can't recall.

11     Q. Can you estimate it?

12     A. Well, it's from the 1700s, circa 1700, so —

13     Q. I don't want you to guess.

14     A. No, I can't — I would be guessing.

15     Q. Okay.

16     A. I mean your appraiser can tell you any piece of

17   china like that from the 1700s, China from England,

18   he'll tell you what that's worth. That is circa 1700.

19       Six pieces from China are from 1400s. Again, I

20   can't give you — and they are smaller dishes. They

21   are from about six inches in diameter, obviously

22   Oriental from the look of them, with smaller dishes

23   that go around them. And the smaller dishes maybe are

24   four inches in diameter.

25       And you can ask your appraiser.

64

1     Q. Where did you get those?

2     A. In China.

3     Q. When were you in China?

4     A. I have been in China eighteen times in my

5   lifetime.

6     Q. Probably a difficult question, but do you

7   remember the number that -- of the time that you went

8   to China and bought these dishes?

9     A. I don't remember when.

10     Q. Do you remember the approximate date that you

11   bought them?

12     A. I can't remember.

13     Q. Do you remember how much you paid for them?

14     A. Oh, how much did I pay for those?

15       At this moment I don't remember, but I will

16   recall. If I recall before the end of the deposition I

17   will tell you.

18     Q. Thank you.

19       Any other China?

20     A. There are approximately six other dishes,

21   French, 1800s, that are serving dishes.

22     Q. And where did you get those?

23     A. In France.

24     Q. Do you remember what you paid for them?

25     A. No. But I didn't pay as much as I paid in

65

17 (Pages 62 to 65)

Case 08-31643   Doc# 25-1   Filed: 03/23/10   Entered: 03/23/10 12:20:45   Page 7 of 23

# EXHIBIT C

DAVID BURCHARD
CHAPTER 13 TRUSTEE
P.O. BOX 8059
FOSTER CITY, CA 94404
(650) 345-7801 FAX (650) 345-1514
(707) 544-5500 FAX (707) 544-0475

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

In re:
    ELEANOR M. LINDQUIST
    969G EDGEWATER BLVD
    FOSTER CITY, CA 94404

    ###-##-4480
                Debtor(s).

Case No.: 08-3-1643 SFC13
Chapter 13

***FOURTH AMENDED*** OBJECTION TO
CONFIRMATION, WITH A MOTION TO
DISMISS, OF THE CHAPTER 13 PLAN, BY
DAVID BURCHARD, CHAPTER 13 TRUSTEE
AND NOTICE

**CONFIRMATION HEARING:**
Date:      09/09/2009
Time:     09:30 AM
Place:    United States Bankruptcy Court
            235 Pine Street 23rd Floor
            San Francisco, California

DAVID BURCHARD, Chapter 13 Trustee in the above-entitled action, hereby objects to
Confirmation of the Chapter 13 Plan proposed hereunder by Debtor(s) for the following reason(s).

1.      Debtor has not met the requirements of 11 U.S.C. § 1325(a)(3) and (6) in that the instant case is
Debtor's third bankruptcy proceeding. Case number 02-3-3288 SFC filed on November 22,
2002, and discharged on March 16, 2004. Case number 08-31052 SFC filed on June 16, 2008,
dismissed prior to confirmation on July 9, 2008. The instant case filed on September 3, 2008,
gives rise to the issue whether this case was filed in good faith, let alone whether or not Debtor's
Chapter 13 Plan is feasible. Trustee seriously questions whether debtor has the intent and ability
to achieve confirmation or discharge, and believes that this matter should be dismissed with a bar
of re-filing any bankruptcy in the next two years, without specific approval of the bankruptcy
court.

2.      The Trustee is in receipt of a declaration from Debtor that states a substantial change in valuation
of personal property. Trustee requests additional information as to the valuation of personal
property.

3.      Trustee requests a ***signed*** copy of Debtor's 2008 personal and business tax returns.

PLEASE TAKE NOTICE that, without prior notice, at the above-referenced confirmation hearing date assigned to your Chapter 13 case, the Court may DISMISS the above-referenced case upon making a determination that Debtor(s) has/have not presented a feasible Plan, Debtor(s) has/have not made the required payments under the Plan, Debtor(s) has/have violated the statutory debt limitations set for a Chapter 13 case, Debtor(s) has/have not filed this proceeding in good faith, Debtor(s) has/have not provided documents and/or Schedules and Plan as required under the Bankruptcy code, and/or Debtor(s) has/have not provided the Trustee with Payment Advices or Declarations, as required by the written Order Re: Payment Advices in Chapter 13 Cases, dated September 26, 2006.

Dated: September 8, 2009       DAVID BURCHARD
_____      _____

                                    DAVID BURCHARD, Chapter 13 Trustee

Certificate of Mailing

I, TINA MITCHELL, the undersigned, certify that:

I am over the age of 18 years and not a party to this action. I am employed by the Trustee whose business address is 393 Vintage Park Drive, Suite #150, Foster City, CA. On the date set forth below, I served a copy of the Objection to Confirmation, with a Motion to Dismiss, of the Chapter 13 Plan, by David Burchard, Chapter 13 Trustee and Notice, and this Certificate of Mailing, on the persons listed below by following our ordinary business practice for mailing, where it is deposited in the ordinary course of business with the U.S. Postal Service by first class mail. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

ELEANOR M. LINDQUIST              RUTH ELIN AUERBACH
969G EDGEWATER BLVD             LAW OFFICES OF RUTH ELIN AUERBACH
FOSTER CITY, CA 94404               711 VAN NESS AVE #440
                                      SAN FRANCISCO, CA 94102

United States Trustee
235 Pine Street, Suite 700
San Francisco, CA   94104

Dated: September 8, 2009            TINA MITCHELL
_____      _____

                                    TINA MITCHELL/RG
                                    Case Analyst for David Burchard, Trustee

# EXHIBIT D

RUTH ELIN AUERBACH (SBN 104191)
Attorney at Law
711 Van Ness Avenue, Suite 440
San Francisco, CA 94102
Telephone: (415) 673-0560
Facsimile: (415) 673-0562
e-mail: attorneyruth@sbcglobal.net

Attorney for Debtor, Eleanor Lindquist

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.: 08-31643 |
| | ) Chapter 13 |
| ELEANOR LINDQUIST | ) |
| | ) Declaration of Eleanor Lindquist in Response |
| Debtor. | ) to Trustee's Fourtth Amended Objection to |
| | ) Confirmation of Debtor's Plan |
| | ) |
| | ) Hearing Date: October 14, 2009 |
| | ) Time:  9:30 A.M. |
| | ) Courtroom:  23rd Floor, Hon. Thomas E. |
| _____ | ) Carlson |

I, ELEANOR LINDQUIST, declare that:

1. I am the Debtor herein.

2. The reason for this third bankruptcy filing is as follows:  In 2002 I filed a Chapter 7 petition in this court, Case No. 02-33288, because a business that I had operated failed because my main funder, Hewlett Packard stopped funding it.  Because I had no money, my employees filed claims with the California Labor Commissioner which I could not afford to pay.  My husband previously filed a bankruptcy case in Oregon.  When his debts were discharged, his credit card creditors began pursuing me as his spouse.  In addition, business creditors of his from his previous business venture are also coming after me for payment of his debts.  I was not involved in that business.  On June 16, 2008, I filed a Chapter 13 case to deal with the debts.

DECLARATION IN RESPONSE TO
TRUSTEE'S FOURTH OBJECTION TO PLAN  - 1

Because I was representing myself, I was not able to prepare full schedules required in connection with the case, and the case was dismissed. I thereafter hired an attorney to file a new Chapter 13, and this case was thereafter filed.

3. I am divorced, but am in the process of litigation regarding the division of property and related issues from my marriage to Jeffrey Lindquist. The property settlement proceeding is pending in the San Mateo Superior Court, Case No. F081525 ("Superior Court case").

4. In connection with the Superior Court case, my deposition was taken on July 10, 2009. I believe that a copy of the deposition transcript was transmitted to David Burchard, Trustee by my former husband's attorney, Ian Yourtz. I believe that the deposition transcript is the "declaration" referred to in item 2 of the Trustee's Fourth Amended Objection to Chapter 13 Plan. In reviewing the deposition transcript, I have discovered a number of errors. My attorney is in the process of changing law firms, so he hasn't been able to submit the corrections yet, but I am informed and believe that he is preparing the corrections.

5. One of the primary issues in the Superior Court case is the disappearance of a substantial amount of property which had been kept in a storage space ("first storage space"). My former husband was supposed to pay the storage rental fees and when he failed to do so, the storage company had auctioned the contents of the storage space for three months' worth of storage, approximately $800 for items worth over $7,000,000.

6. In the late 1970's through the 1990's I earned a substantial amount of money, and bought artwork, jewelry and other property for my children. Everything was given to my daughter, Megan Kinter in 1998. She lived with me and my former husband off and on from the time of the purchases of the items, and was living with me in 2003 when we put everything in storage.

7. All jewelry which I inherited from my parents was given to my children in 1998.

8. Virtually all of the artwork I had purchased over the years was in the storage space and was lost when that property was auctioned by the storage company.

DECLARATION IN RESPONSE TO
TRUSTEE'S FOURTH OBJECTION TO PLAN    - 2

9.  In approximately 2003, my husband and I separated and that is when he put everything into two storage spaces.  After Mr. Lindquist moved to Oregon for his job, I learned that he had no intention of trying to work things out between us, and he abandoned us.  In 2005, he stopped making any spousal support payments.  When Mr. Lindquist stopped making the support payments, I was unable to support myself, and therefore had to sell some of my property in order to live.  I sold some china and some art boxes in order to get money for living expenses.

10.  I no longer have any of the jewelry I had purchased.  Much of it was lost in the auction sale and some other jewelry, worth approximately $5,000, was stolen more recently.

11.  In 2006, I sold my wedding ring for $2500 for living expenses, after I had been in a serious car accident and had been unable to work.

12.  I had purchased a French Armoire and an American Colonial armoire in 1979, which I had also given to my daughter at the time of the purchases.  Those items were recently recovered from a second storage unit which had been under the control of my ex-husband, when the Family Court judge ordered him to return the property to me and to pay for shipping everything to me.  Those armoires were not mine, but had been stored for the benefit of my daughter, who now has possession of the items.  The family court judge would not order Mr. Lindquist to pay for shipping the items to my daughter, which is why they first went to me.

13.  I had once purchased some antique carpets which I had also given to my daughter in the 1990's.  Because she was living with me at the time my husband put our belongings in storage, those items also were placed into the two storage spaces.  Most of the larger items were in the first storage unit and are now gone.  There are a few smaller rugs still remaining which belong to my daughter.

14.  In the 1990's I had also purchased some valuable art boxes, which I had given to my daughter.  She is in possession of most of those.  The only boxes I still own are those in

DECLARATION IN RESPONSE TO
TRUSTEE'S FOURTH OBJECTION TO PLAN    -  3

which I have placed the ashes of my deceased parents and pets. I have a total of five boxes worth no more than $3,000 total.

15. I own a small Spinet piano worth no more than $500. I did once own a baby grand piano, but donated it to St. Dominic's church in 2003.

16. Because of the nature of the proceedings in family court, I have had to hire attorneys to represent me, because the issues are too complicated for me to represent myself. Subsequent to the filing of this Chapter 13 case, I did borrow the money to pay the attorneys from some friends with the understanding that I would work for them to pay off the debt.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Foster City, California, this _8th__ day of October 2009.

 /s/ Eleanor Lindquist_____
ELEANOR LINDQUIST

DECLARATION IN RESPONSE TO
TRUSTEE'S FOURTH OBJECTION TO PLAN   -   4

# EXHIBIT E

DAVID BURCHARD
CHAPTER 13 TRUSTEE
P.O. BOX 8059
FOSTER CITY, CA 94404
(650) 345-7801 FAX (650) 345-1514
(707) 544-5500 FAX (707) 544-0475

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

In re:

    ELEANOR M. LINDQUIST
    969G EDGEWATER BLVD
    FOSTER CITY, CA 94404

    ###-##-4480

            Debtor(s).

Case No.: 08-3-1643 SFC13
Chapter 13

***FIFTH AMENDED*** OBJECTION TO
CONFIRMATION, WITH A MOTION TO
DISMISS, OF THE CHAPTER 13 PLAN, BY
DAVID BURCHARD, CHAPTER 13 TRUSTEE
AND NOTICE

**CONFIRMATION HEARING:**
Date:       11/18/2009
Time:      09:30 AM
Place:     United States Bankruptcy Court
            235 Pine Street 23rd Floor
            San Francisco, California

DAVID BURCHARD, Chapter 13 Trustee in the above-entitled action, hereby objects to
Confirmation of the Chapter 13 Plan proposed hereunder by Debtor(s) for the following reason(s).

1.      Based on the facts declared in paragraph 4 of Debtor's declaration filed on October 8, 2009, the
        Trustee's objection number 2 of the fourth amended objection to confirmation has not been
        resolved. The Trustee requests that deposition transcript be corrected and a corrected copy be
        submitted to the Trustee.

PLEASE TAKE NOTICE that, without prior notice, at the above-referenced confirmation hearing date assigned
to your Chapter 13 case, the Court may DISMISS the above-referenced case upon making a determination
that Debtor(s) has/have not presented a feasible Plan, Debtor(s) has/have not made the required payments
under the Plan, Debtor(s) has/have violated the statutory debt limitations set for a Chapter 13 case, Debtor(s)
has/have not filed this proceeding in good faith, Debtor(s) has/have not provided documents and/or Schedules and
Plan as required under the Bankruptcy code, and/or Debtor(s) has/have not provided the Trustee with Payment
Advices or Declarations, as required by the written Order Re: Payment Advices in Chapter 13 Cases, dated
September 26, 2006.

Dated:  November 10, 2009 _____

                        DAVID BURCHARD
                        _____

                        DAVID BURCHARD, Chapter 13 Trustee

Case: 08-31643   Doc# 24   Filed: 11/10/09   Entered: 11/10/09 14:13:11   Page 1 of 2
Case: 08-31643   Doc# 25-1   Filed: 03/23/10   Entered: 03/23/10 12:20:45   Page 17
of 23

Certificate of Mailing

I, ROSA GARCIA, the undersigned, certify that:

I am over the age of 18 years and not a party to this action. I am employed by the Trustee whose business address is 393 Vintage Park Drive, Suite #150, Foster City, CA. On the date set forth below, I served a copy of the Objection to Confirmation, with a Motion to Dismiss, of the Chapter 13 Plan, by David Burchard, Chapter 13 Trustee and Notice, and this Certificate of Mailing, on the persons listed below by following our ordinary business practice for mailing, where it is deposited in the ordinary course of business with the U.S. Postal Service by first class mail. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

ELEANOR M. LINDQUIST                    RUTH ELIN AUERBACH
969G EDGEWATER BLVD                      LAW OFFICES OF RUTH ELIN AUERBACH
FOSTER CITY, CA 94404                     711 VAN NESS AVE #440
                                         SAN FRANCISCO, CA 94102


United States Trustee
235 Pine Street, Suite 700
San Francisco, CA  94104


Dated: November 10, 2009                 ROSA GARCIA

                                         ROSA GARCIA

# EXHIBIT F



Exh. F, pg. 1



Exh. F, pg.2

# EXHIBIT G

\April 14, 1986

Megan Wells Kinter
San Francisco, California

Dear Megan,

Today we purchased two armoires from Grants Antiques on Clement Street in San Francisco with the funds given to you by your Grandparents. The purpose of this purchase is to provide a place of your own for your clothing and other possessions

Upon your 18th birthday or anytime there after you may take possession of these items and move them to a location of your choice. Until then they will stay with you and me and use them as suits your needs.

As the sole heir this is part of all that you will inherit upon your 18th birthday.

With Love,

*Eleanor Calamari*

Eleanor Calamari,
You're Mother