RUTH ELIN AUERBACH (SBN 104191)
Attorney at Law
711 Van Ness Avenue, Suite 440
San Francisco, CA 94102
Telephone: (415) 673-0560
Facsimile: (415) 673-0562
e-mail: attorneyruth@sbcglobal.net

Attorney for Debtor, Eleanor Lindquist

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ) Case No.: 08-31643
) Chapter 13
ELEANOR LINDQUIST )
)
Debtor. )
) Trial Date: March 30, 2010
) Time: 9:30 A.M.
) Courtroom: 23rd Floor, Hon. Thomas E.
) Carlson
)
)

**DEBTOR'S TRIAL BRIEF**

The debtor is an individual who filed this case Chapter 13 case in order to deal with debts incurred in connection with her dissolution, including some of her husband's credit cards and business debts from which he was discharged in a bankruptcy case filed in Oregon, and which creditors were then pursuing the Debtor for payment. She could not file a Chapter 7 because in 2002 she had filed a Chapter 7 petition in this court, Case No. 02-33288, and she was ineligible therefore under Section 109 of the bankruptcy code. That case had been filed because a business that she had operated failed when her main funder, Hewlett Packard stopped

DEBTOR'S TRIAL BRIEF 1

funding it, and her employees filed claims with the California Labor Commissioner which she could not afford to pay.

The debtor is divorced, but is in hotly contested litigation regarding the division of property and related issues from her marriage to Jeffrey Lindquist. The property settlement proceeding is pending in the San Mateo Superior Court, Case No. F081525 ("Superior Court case").

In connection with the Superior Court case, the debtor's deposition was taken on July 10, 2009. A copy of the transcript, or some pages from it, was forwarded by the ex-husband's attorney to Mr. Burchard, the Chapter 13 trustee, and to the Office of the United States Trustee. The Debtor was not aware that she had 30 days to review the deposition and make corrections. The Debtor's bankruptcy counsel was not at the deposition, and never saw the transcript until after the Trustee objected to the plan based upon a non-specific "Declaration" of the debtor. At that deposition, the Debtor was only trying to differentiate property that belonged to Mr. Lindquist from property that wasn't his, and did not clearly state (nor was she asked) about to whom the property actually belonged.

One of the primary issues in the Superior Court case is the disappearance of a substantial amount of property which had been kept in a storage space ("first storage space") when the debtor and her husband first separated. The storage space was maintained under the control of Mr. Lindquist, who was supposed to pay the storage rental fees. When he failed to do so, the storage company had auctioned the contents of the storage space for three months' worth of storage, approximately $800 for items worth over $7,000,000.

One of the items that was put into a second storage space was a French Armoire, which appears to be the subject of the Trustee's concerns in this case. The Armoire was purchased for the debtor's daughter, who at the time of the purchase was a minor, and who has always had possession of it, except for the time it was in storage. When the Lindquists separated, the daughter, Meagan Kinter, was living with them, so her property also went into the storage

DEBTOR'S TRIAL BRIEF 2

Case: 08-31643   Doc# 26   Filed: 03/24/10   Entered: 03/24/10 10:50:28   Page 2 of 4

space. The items were recently recovered from the second storage unit which had been under the control of Mr. Lindquist, when the Family Court judge ordered him to return the property to the Debtor and to pay for shipping everything to her. The debtor contends that the armoire was not hers, but had been stored for the benefit of her daughter, who now has possession of the item. The family court judge would not order Mr. Lindquist to pay for shipping the items to Ms. Kinter, which is why they first went to the Debtor.

When the Debtor first purchased the Armoire in 1979 for approximately $1100, she was told by the seller that in ten years it would be worth "over a hundred thousand dollars". At the time she testified at the deposition as to the value, she was going on what the dealer had told her. At that time, she hadn't seen the Armoire for over five years, and had not had it appraised. At one time, one of her family law attorneys was interested in trying to have the item sold so that the Debtor would have money to pay her expenses, including attorneys' fees. Meagan Kinter had agreed to the sale, but when the attorney tried to find someone to purchase the armoire, no one was willing to do so, and the Debtor discovered that the value was probably not a lot more than what she had originally paid for it.

In connection with this Chapter 13 case, Ms. Lindquist and her daughter met with Patricia Cutler at the Office of the United States Trustee. Ms. Kinter confirmed that she had always considered the armoire to be hers, ever since it was purchased when she was 11 or 12 years old. She will also testify as to this fact at trial. Neither the Debtor nor Ms. Kinter has been able to afford to have the Armoire appraised. The Debtor offered to allow the US Trustee's office access to the Armoire to have it valued, but no one ever contacted her to do so.

The Debtor did not intentionally exclude assets from her bankruptcy schedules. She is a 70 year old woman with serious health issues, involved in a hotly contested marital dissolution case. She was living frugally in an apartment which she shared with a roommate because her

DEBTOR'S TRIAL BRIEF 3

income did not allow her anything better. At the time she filed the case, she did not know what was still in storage. She believed that most of the items were not hers, but that they belonged to her daughter to whom she had given them many years ago. The value of furniture and furnishings listed in her schedule reasonably reflected what she believed to be the value of her assets.

Even if the Armoire were determined to be the Debtor's property, its value would not change anything in her Chapter 13 Plan. Since the property is less than the homestead allowance, and the debtor has elected to use the California Bankruptcy exemptions, she could have exempt the property in its entirety.

Based upon the foregoing, the Debtor believes that she has proposed the plan in good faith, and that confirmation of that Plan is appropriate.

Dated: March 23, 2010
LAW OFFICE OF RUTH AUERBACH

By:__/s/ Ruth Elin Auerbach_____
RUTH ELIN AUERBACH,
Attorney for Eleanor Lindquist

DEBTOR'S TRIAL BRIEF 4